# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA SPROWL, | 1: 11-cv-00480-AWI-BAM |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I.  INTRODUCTION

Pending before the Court is plaintiff Donna Sprowl's ("Plaintiff") motion for summary judgment and the cross-motion for summary judgment of defendant Commissioner of Social Security ("Commissioner").  Plaintiff seeks judicial review of an administrative decision denying her claim for Supplemental Security Income disability benefits pursuant to 42 U.S.C. § 1382c(a)(3)(A).

Plaintiff filed her complaint on March 18, 2011.  (Doc. 1.)  Plaintiff filed her summary judgment motion on November 10, 2011. ( Doc. 16.)   The Commissioner filed his summary judgment cross-motion and opposition on December 9, 2011.  (Doc. 17.)  Plaintiff filed her Reply Brief on December 27, 2011 (Doc. 18.)  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to United States Magistrate Judge Barbara A. McAuliffe for findings and recommendations to Chief United States District Judge Anthony W. Ishii.

## II. BACKGROUND

### A. Overview of Administrative Proceedings

On December 1, 2005, Plaintiff filed applications for Supplemental Security Income benefits, alleging disability beginning June 28, 2000. (Administrative Record, "AR," at 144-146.) Plaintiff's application was denied on initial review and again on reconsideration. (AR at 70-83, 85-90.) Thereafter, Plaintiff requested a hearing before an Administrative Law Judge (the "ALJ"). On April 13, 2009, Plaintiff appeared with counsel and testified before the ALJ. (AR at 25-69.) In a decision dated July 31, 2009, the ALJ determined Plaintiff was not disabled within the meaning of the Act. (AR at 10-24.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. (AR at 1-5.) Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).

### B. Plaintiff's Background

Plaintiff was born on December 15, 1954. (AR at 30.) Plaintiff completed a twelfth grade education, and participated in post-graduate vocational and technical training. (AR at 30.) Plaintiff currently lives by herself in a duplex. (AR at 29.) Plaintiff's last working experience was as a customer service representative in June of 2001. (AR at 30.)

### C. Plaintiff's Testimony

On April 8, 2009, Plaintiff testified before the ALJ regarding her claim for disability. (AR at 27-69.) Plaintiff was represented by counsel. (AR at 27.)

Plaintiff listed her medical problems as diabetes, high blood pressure, asthma, chronic back pain and severe depression. (AR at 45.) Plaintiff's depression and back pain causes problems concentrating and focusing. (AR at 57.) Plaintiff testified she saw a mental health provider every three months. (AR at 46.) Plaintiff stated she uses a cane to ambulate, which was prescribed by a nurse practitioner. (AR at 48.)

Plaintiff currently lives off General Assistance, living in subsidized housing and receives food stamps. (AR at 39.) Plaintiff dresses, baths, and cooks for herself. She also does her own laundry. (AR at 39-40.) Plaintiff owns a car, has a drivers license and drives, but not very often.

(AR at 37-8.) Plaintiff lies down and watches television most of the day. (AR at 47.) Plaintiff testified she could stand for 20 minutes, sit for 30 minutes, walk for 20 minutes. (AR at 35.)

### 1. Vocational Expert Testimony

A vocational expert testified at the hearing that Plaintiff had past relevant work as a customer service representative, telemarketer, and teacher's aide (AR at 63). The ALJ asked the vocational expert to assume a hypothetical individual who could lift and carry up to 20 pounds occasionally and up to 10 pounds frequently; sit eight hours in an eight-hour day, but needed to sit or stand at will every 30 minutes; stand and walk for up to six hours in an eight-hour day, with an option to change position every 40 minutes; not climb ladders, ropes, or scaffolds, and could occasionally stoop, crouch, crawl, and kneel; perform short, simple tasks; and handle occasional exposure to the general public. (AR at 63-64). The vocational expert testified that such an individual could work as a customer service representative (AR at 64).

### D. Third Party Testimony From Plaintiff's Neighbor, Bonnie Brunette

Bonnie Brunette, a neighbor, reported on March 12, 2007, that she had known Plaintiff for 6 years and had seen changes in her mood and abilities. (AR at 176-83). Plaintiff spent most of the day sleeping. (AR at 176-77.) She bathed infrequently and needed reminders to clean her face and brush her teeth. (AR at 178.) She needed encouragement to clean laundry, wash dishes, and pick up prescriptions. (AR at 178.)

Ms. Brunette testified that Plaintiff could not stand very long, cried a lot, and thought her son was "out to get her." (AR at 176-77.) Plaintiff had trouble understanding, concentrating, completing tasks, and talking. (AR at 181.) Plaintiff could sustain attention 5 to 10 minutes at a time. (AR at 181.) Ms. Brunette reported that Plaintiff was in pain all of the time, her leg sometimes gave out, she was depressed and had trouble telling fantasy from reality when it came to dealing with her family. (AR at 183.)

### E. Medical History

The entire medical record was reviewed by the Court. (AR at 172-514.) The medical evidence will be referenced below to the extent it is necessary to the Court's decision.

**F.     ALJ Findings**

In reaching his decision that Plaintiff has not been under a disability within the meaning of the Act, the ALJ made the following findings:

1. Plaintiff has not engaged in substantial gainful activity since November 8, 2005, the application date. (20 CFR 416.971 *et seq.*);

2. Plaintiff has the following severe combination of impairments: degenerative disc disease of the lumbar spine; osteoarthritis of the right knee; a history of morbid obesity; diabetes, well controlled; and a major depressive disorder, recurrent. (20 CFR 416.920(c));

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (20 CFR 416.920(d), 416.925 and 416.926);

4. Plaintiff's Residual Functional Capacity: Plaintiff has the residual functional capacity to lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently; and sit eight out of eight hours with normal breaks with a sit/stand at will option every 30 minutes. Plaintiff can stand/walk 6 of 8 hours with normal breaks and can stand/walk 40 minutes at a time before needing a change of position. She cannot climb ladders, ropes or scaffolds; and can occasionally stoop, crouch, crawl and kneel. From a mental standpoint, there are no restrictions in Plaintiff's ability to understand, remember and carry out short, simple instructions. Plaintiff has slight limitations in the ability to understand, remember and carry out detailed job instructions. The ability to interact appropriately with the public is moderately limited, as she is limited to occasional exposure to the general public. Plaintiff has slight limitations in the ability to make judgments on detailed work related decisions. Plaintiff has slight limitations in the ability to interact appropriately with co-workers and supervisors. Plaintiff has slight limitation in the ability to respond appropriately to changes in a routine work setting. By slight, there are some mild limitations in this area but the individual

|   |   |   |
|---|---|---|
| | | can generally function well.  By moderation, there is greater than mild but less than marked limitation in this area, but the individual is still able to function satisfactorily. |
| | 7. | Plaintiff is capable of performing her past relevant work as a customer service clerk, Dictionary of Occupational Tiles (DOT) 241.367-014, sedentary exertion, specific vocational preparation time (SVP) 5, skilled work; and telemarketer, DOT 299.357-014, sedentary, (SVP) 3, semi-skilled work.  This work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity. (20 CFR 416.965); |
| | 9. | Plaintiff has not been under a disability, as defined by the Act, from November 8, 2005, through the date of the administrative decision. (20 CFR 416.920(f)). |

(AR at 13-24.)

### III.   DISCUSSION

**A.   Standard of Review**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff argues the ALJ made three errors: (1) the ALJ improperly evacuated medical opinion testimony; and (2) the ALJ improperly assessed Plaintiff's credibility; and (3) the ALJ improperly evaluated third party testimony supporting Plaintiff's claim for disability.

**B.     Medical Opinion Testimony Evaluation**

    **1.     Legal Standard**

In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari,* 246 F.3d 1195, 1202 (9th Cir.2001); 20 C.F.R. § 404.1527(d)(1)-(2). The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). The Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. If contradicted by another doctor, the opinion of an examining doctor can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). "This burden can be met by providing a detailed summary of the facts and conflicting clinical evidence, along with a reasoned interpretation thereof." *Rodriguez v. Bowen,* 876 F.2d 759, 762 (9th Cir. 1989).

Notwithstanding the above discussion, an ALJ is not required to accept an opinion of a treating physician, or any other medical source, if it is conclusory and not supported by clinical findings. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a medical source's opinion concerning a claimant's limitations on the ultimate issue of disability. *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the medical source's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart,* 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir.1999).

**2.     Mental Health Opinions Provided By Human Resources Consultants**

Plaintiff argues the ALJ did not give proper attention to the opinions provided by various treating physicians at Human Resources Consultants ("HRC"). (AR at 412-426.) Specifically, Plaintiff has argued that treatment notes diagnosing a Major Depressive Disorder, and GAF scores of 45 and 50 indicate a serious impairment in occupational functioning that should have resulted in a finding of disability. Plaintiff additionally argues the ALJ failed to provide specific reasons to reject these opinions.

Plaintiff's argument that Plaintiff's GAF scores of 45 and 50 *per se* call for a finding of "serious impairment" in work functioning is incorrect. First, as the Commissioner correctly points out, a GAF score of 41-50 indicates serious symptoms *or* serious impairment in social, occupational or school functioning. *See* DSM-IV-TR, p. 34. Thus, by definition, the GAF scores at issue do not require a finding of "serious impairment in occupational functioning."

Moreover, an ALJ is not required to give controlling weight to a treating physician's GAF score; "indeed, an ALJ's failure to mention a GAF score does not render his assessment of a claimant's RFC deficient." *Chavez v. Astrue,* 699 F. Supp. 2d 1125, 1135 (C.D. Cal. 2009); citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.

7

Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate."); *Petree v. Astrue*, 260 Fed.Appx. 33, 42 (10th Cir. 2007) (Unpublished Disposition) ("[A] low GAF score does not alone determine disability, but is instead a piece of evidence to be considered with the rest of the record."); *Baker v. Astrue*, 2009 WL 279085, *3 (C.D. Cal. 2009) ("In evaluating the severity of a claimant's mental impairments, a GAF score may help guide the ALJ's determination, but an ALJ is not bound to consider it."); *Florence v. Astrue*, 2009 WL 1916397, *6 (C.D. Cal. 2009) ("[W]ithout more, the ALJ's assessment of the medical record is not deficient solely because it does not reference a particular GAF score.").

The ALJ also cited contradictory medical opinion testimony to discount the weight attached to the GAF scores. The opinions of examining physicians, whose opinions are based on independent clinical findings constitute substantial evidence. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir.2007) ("when an examining physician provides 'independent clinical findings that differ from the findings of the treating physician,' such findings are 'substantial evidence.'"); *Crosby v. Astrue,* 2011 WL 1047338 (E.D. Cal. 2011) (same). The ALJ cited the opinions of two independently examining physicians which did not support HRC's GAF scores. State agency psychiatrist Dr. Gregg, an "expert in the Social Security disability programs," *see* Social Security Ruling (SSR) 96-6p, opined that Plaintiff's mental impairment was not even severe despite the GAF score of 50 (AR at 357). In July 2006, Bradley Daigle, M.D., assessed Plaintiff's GAF score at 70. (AR at 19.) Other physicians opined Plaintiff's mental impairments did not affect her ability to work as well:

> From a psychiatric standpoint, the examiner opined the claimant is employable. She was not significantly limited in the ability to understand, remember, and carry out simple one or two step instructions. She was not significantly limited in the ability to follow detailed and complex instructions. In addition, she was not significantly limited in the ability to relate and interact with supervisors, co workers and the public. Further, she was not significantly limited in the ability to maintain concentration, persistence and pace.

(AR at 19.) These are specific and legitimate reasons to discount HRC's GAF scores.

Moreover, and contrary to Plaintiff' arguments, the ALJ did not reject the opinions of the HRC. The HRC did not offer any opinions on Plaintiff's functional limitations or her ability to work. Rather, the medical evidence offered by the HRC consists of treatment notes and

observations of Plaintiff, culminating in Plaintiff's diagnosis of a Major Depressive Disorder. HRC's notes make no reference to Plaintiff's ability to understand, remember and carry out simple or detailed instructions, nor do they opine on Plaintiff's ability to interact with co-workers or the general public. These are the type of medical opinions an ALJ considers when determining a claimant's residual functional capacity. *See* 20 C.F.R. § 404.1527(a)(2). The Regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). The medical evidence from the HRC does not contain any "judgments about the nature and severity of [Plaintiff's] impairments," nor do they discuss what Plaintiff could "still do despite" her impairments, nor do they provide any "mental restrictions." *Id*. Accordingly, there were no "opinions" for the ALJ to accept or reject.

Lastly, while there are no medical opinions regarding Plaintiff's ability to work at issue, the ALJ accepted the HRC's diagnosis. The HRC concluded that Plaintiff suffered from a Major Depressive Disorder, recurrent. (AR at 424.) The ALJ similarly found that Plaintiff suffers from the following severe impairment: Major Depressive Disorder, recurrent. (AR at 15.) Accordingly, the ALJ accepted the HRC's diagnosis - which is the entirety of the medical opinion evidence offered in support of Plaintiff's claim for disability. Thus, the ALJ did not err in his evaluation of medical opinion evidence.

**C.     Plaintiff's Credibility Determination**

A two step analysis applies at the administrative level when considering a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id*. at 1281-1282. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id*. at 1281. The ALJ must "state which

testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen,* 80 F.3d at 1284; *Orn v. Astrue,* 495 F.3d 625, 638 (9th Cir. 2007). An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir.1989); *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir.1986).

Plaintiff argues the ALJ failed to provide clear and convincing reasons to reject Plaintiff's subjective symptom testimony concerning the limiting effects of her back pain and depressive disorder. The Commissioner responds that the ALJ offered numerous reasons to discount Plaintiff's testimony, including evidence of malingering, Plaintiff's limited and conservative treatment record, a lack of objective medical evidence, and Plaintiff's activities of daily living.

The ALJ properly noted that Plaintiff's treating physician suspected her of malingering. (AR at 23, 482.) The ALJ also references other instances of malingering, such as Plaintiff's alleged visual impairments:

> Further detracting from an overall picture of credibility are the claimant's allegations of visual impairment, as noted previously despite her daily activities including driving, and her presentation at the hearing of a California Driver's License dated July 2008 and expiring December 2011, with no restrictions assessed.

(AR at 23.) Evidence of malingering alone is sufficient to discredit a claimant. *See Carmickle v. Comm. Soc. Sec.,* 533 F.3d 1155, 1160 (9th Cir. 2009) (the Ninth Circuit's requirement of clear and convincing reasons for finding claimant's testimony not credible "does not apply [] when there is affirmative evidence that the claimant is malingering").

Nonetheless, the ALJ provided specific and legitimate reasons to reject Plaintiff's subjective symptom testimony. The ALJ noted a wide range of daily activities which contradicted Plaintiff's testimony:

> "The record shows that the claimant engages in a fairly wide range of daily activities despite her allegations of depression, anxiety in public and pain symptoms. Claimant and third party statements in the record indicate that the claimant uses bus transportation independently. She has a drivers license, but no vehicle. She does light household chores, cleaning, and cooking. She handles her own bills, spends time at a computer, shops for groceries, attends church services, visits with her neighbors, and attends her grandchild's birthday parties.

(AR at 23.) Activities which do not support the degree of pain or mental limitation alleged by a claimant is a specific and legitimate reasons to reject subjective symptom testimony. *See, Morgan v. Apfel*, 169 F.3d 595, 599-600 (9th Cir.1999) (ALJ may properly rely on contradictions between claimant's reported limitations and claimant's daily activities).

As the ALJ set forth valid reasons for discounting Plaintiff's credibility, his rejection of Plaintiff's subjective symptom testimony was proper.

**D.    Lay Testimony**

Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir.2001); *Bayliss v. Barnheart,* 427 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ need only give germane reasons for discrediting the testimony of a lay witness.") In rejecting lay witness testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does not "clearly link his determination to those reasons" and substantial evidence supports the ALJ's decision. *Lewis,* 236 F.3d at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.1982).

Plaintiff argues the ALJ failed to provide germane reasons to reject the lay testimony of Plaintiff's neighbor, Bonnie Brunette, who testified to certain physical and mental limitations and impairments. The Commissioner responds that the ALJ provided germane reasons to discount Ms. Brunette's testimony, because Plaintiff's activities of daily living - as reported by both Ms. Brunette and Plaintiff - conflicted with the disabling effects of Plaintiff's alleged impairments.

The ALJ provided germane reasons to reject Ms. Brunette's lay testimony. Ms. Brunette's testimony mirrored that of Plaintiff's, and the ALJ properly noted that objective medical evidence did not support Plaintiff's claims of disabling impairments. (AR at 22.) The ALJ also noted the wide range of activities of daily living discussed in "third party statements," and concluded that those activities of daily living did not support the degree of pain or mental limitations alleged by Plaintiff or Ms. Brunette. (AR at 22- 23.) These are germane reasons to reject Ms. Brunette's testimony. *See, Bayliss v. Barnheart,* 427 F.3d 1211, 1218 (9th Cir. 2005) ("Inconsistency with medical evidence is one such reason [to reject lay testimony]. The ALJ accepted the testimony of Bayliss's family and friends that was consistent with the record of Bayliss's activities and the objective evidence in the record; he rejected portions of their testimony that did not meet this standard. The ALJ's rejection of certain testimony is supported by substantial evidence and was not error.")

### IV.   CONCLUSION

Based on the foregoing, the Court finds the ALJ's decision is supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court RECOMMENDS that:

1. Plaintiff's motion for summary judgment be DENIED;
2. The Commissioner's cross-motion for summary judgment be GRANTED;
3. The Clerk of Court enter judgment in favor of the Commissioner of Social Security, and against Plaintiff Donna Sprowl.

These findings and recommendations will be submitted to the Chief United States District Judge Anthony W. Ishii, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fifteen (15) days after being served with these findings and recommendations, the parties may file

written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

    IT IS SO ORDERED.

| | |
|---|---|
| **Dated:**    **September 14, 2012** |      **/s/ Barbara A. McAuliffe**<br>UNITED STATES MAGISTRATE JUDGE |